IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JULIE MEYER and VIVA INVESTMENT
PARTNERS AG,

      Plaintiffs,

v.

RENE EICHENBERGER, NEW VENTURE
ASSOCIATES, LLC, (ALTERNATIVE)2
HOLDING AG n/k/a NEW VENTURE
ASSOCIATES AG, CENTURY VENTURE SA,
JOHN TEXTOR, and WYNDCREST
HOLDINGS, LLC,

      Defendants.

_____/

## COMPLAINT

Plaintiffs Julie Meyer ("Meyer") and VIVA Investment Partners AG ("VIP") hereby sue Rene Eichenberger ("Eichenberger"), New Venture Associates, LLC ("NVA"), (Alternative)2 Holding AG n/k/a New Venture Associates AG ("A2"), Century Venture SA ("Century Venture"), John Textor ("Textor"), and Wyndcrest Holdings, LLC ("Wyndcrest") all of whom are collectively referred to herein as "Defendants," and allege:

## INTRODUCTION

1.     This is a fraud case stemming from an oral agreement between Meyer and Eichenberger to establish a 50/50 business arrangement between the two. While Meyer upheld her end of the bargain and contributed her interest in several businesses to the resulting entity—Pelion Pension Advisors AG ("Pelion") n/k/a Viva Investment Partners AG[1]—Eichenberger failed

---

[1] Because Pelion became VIP, the terms Pelion and VIP may be used interchangeably to refer to the same entity throughout this Complaint.

to properly transfer his business interests to Pelion as promised, effectively taking an initial fifty (50%) percent stake in VIP without any contribution. Furthermore, before, during, and after his tenure as Chairman of VIP's board, Eichenberger, in conjunction with and aided by the other defendants, defrauded Meyer and VIP, and exploited his position to benefit and secure for himself and his codefendants lucrative business opportunities intended for VIP.

## **PARTIES**

2.     Meyer is a U.S. Citizen currently residing in Switzerland. At material times, she conducted business in the Southern District of Florida.

3.     VIP is a Swiss corporation with its principal place of business in Zollikon, Switzerland. VIP is a private equity firm that invests in various entities, including the general partners and management companies of venture capital and private equity funds, with the goal of taking the underlying funds to scale. VIP is the successor entity of Pelion Pension Advisors SA d/b/a VIVA Capital ("Pelion"). Pelion was formed in July 2018 as part of a transaction whereby Eichenberger and Meyer agreed to create a 50/50 partnership by contributing their interests in certain entities, as described herein.

4.     At material times, Eichenberger was a resident in the United States, residing in, and holding relevant business interests in, the Southern District of Florida.

5.     At material times, Textor was a Florida resident holding relevant business interests in the Southern District of Florida.

6.     Century Venture SA ("Century") is a Marshall Islands corporation with its principal place of business in the Marshall Islands.

7.     A2 is a Swiss corporation with its principal place of business in Switzerland. A2 is the predecessor entity of New Venture Associates AG.

8.      NVA is a Florida corporation with its principal place of business in Florida. Eichenberger is the principal of NVA.  Upon information and belief, Eichenberger uses NVA as a holding company for his various business interests.

9.      Wyndcrest is a Florida limited liability company with its principal place of business in Florida.

## JURISDICTION

10.      The U.S. District Court for the Southern District of Florida has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000. The action is among citizens of different countries and defendants resident in Florida.  Specifically, while Meyer is a Swiss resident and VIP is a Swiss entity, NVA is a Florida company and Textor is a Florida resident.

11.      Personal jurisdiction over Eichenberger is proper because at material times Eichenberger has used his interest in NVA, a Florida corporation with its principal place of business in the Southern District of Florida, to perpetrate his fraudulent scheme against Plaintiffs. Indeed, through NVA, Eichenberger also made fraudulent representations to Meyer, who was acting in her capacity as a representative of VIP at the time, while in the Southern District of Florida during a trip in March 2019.

12.      Personal jurisdiction over Century Venture is proper because Century Venture contracted with NVA, a Florida entity, in furtherance of the scheme to defraud Plaintiffs.  Upon information and belief, certain funds to which Plaintiffs are entitled can be traced to Florida-based bank accounts.

13.      Personal jurisdiction is proper over NVA, Textor, and Wyndcrest as all are Florida residents.

14.     Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, events, or omissions that effectuated the frauds giving rise to the claims pleaded herein occurred in the Southern District of Florida, and NVA maintains its principal place of business in the District.

## FACTS

### A.     *Meyer and Eichenberger combine their business interests into Pelion n/k/a VIP*

15.     During or about late spring of 2018, Eichenberger and Meyer reached an understanding to conduct business in a 50/50 business arrangement (the "50/50 Agreement") in which they were each entitled to fifty (50%) percent of the proceeds from the resulting ventures, including the revenues and profits.  The 50/50 Agreement formed the foundation of the business relationship between Eichenberger and Meyer.

16.     In furtherance of the 50/50 Agreement, rather than contributing liquid capital, Meyer and Eichenberger agreed to contribute assets to the resulting entity—Pelion Pension Advisors SA d/b/a VIVA Capital ("Pelion").[2]  Specifically, Meyer agreed to contribute her interest in Ariadne Capital Group Limited ("ACGL"), Ace Fund GP ("ACE GP"), and Entrepreneur Country Global Limited n/k/a Lattun Limited ("ECGL"), each of which was wholly-owned by Meyer as of July 2018.  These assets had been valued at approximately €25,000,000 in December 2017.  Eichenberger also asked Meyer to assign the £2.1 million of her Secured Creditor position in ACGL to Pelion on the explicit understanding that he would secure a credit bid from the administrator for her, and bring those assets into Pelion.  Eichenberger agreed to contribute his interest in Pulse Evolution Corporation ("Pulse Evolution"), which was worth approximately $15,000,000 at the time.

---

[2] Pelion eventually became VIVA Investment Partners AG ("VIP").

17.     Under the 50/50 Agreement, Eichenberger and Meyer effectively created a jointly owned "holding."  Pelion was to serve as their onshore Swiss entity.  Offshore, they used Century Venture and Donnybrook Initiative Ltd. ("Donnybrook") for tax optimization purposes. Donnybrook's structure was intended to mirror Century Venture, which Eichenberger explained to Meyer would house equity holdings of VIP for tax optimization.  While Century Venture was allegedly an offshore holding company for Eichenberger, Donnybrook was to serve as Meyer's offshore holding company.  At this time, Meyer understood that (1) Eichenberger was the sole owner of Century Venture; (2) Eichenberger had the authority to enter into this agreement; (3) Eichenberger was her personal attorney, thereby operating as her fiduciary; and (4) Eichenberger, A2, and Century Venture were compliant with all applicable laws.

18.     Meyer had identified Pelion as an acquisition target for CHF 10,000.  Eichenberger wished to become the business partner of Meyer, and suggested that she should not be on both sides of the deal, and so agreed to act as the acquiror through A2 (n/k/a New Venture Associates AG).  To facilitate their 50/50 understanding, Meyer and Eichenberger acquired Pelion Pension Advisors SA from Sarah Caygill on or about July 30, 2018.  This acquisition was documented by a purchase agreement between Sarah Caygill and (Alternative)2 Holding AG ("A2"), with an effective date of July 30, 2018 (the "Pelion Purchase Agreement").  A true and correct copy of the Pelion Purchase Agreement is attached hereto as **Exhibit A**.

19.     Pursuant to the Pelion Purchase Agreement, A2 purchased Pelion for a total purchase price of CHF 60,000.  Of that, CHF 50,000 was set off from the total purchase price as unpaid capital that was also transferred to A2.  As such, A2 covered the initial cost of CHF 10,000 for the acquisition of Pelion, for which it was later reimbursed.

20.     In essence, the 50/50 arrangement was supposed to combine each of their business interests under the umbrella of a single entity and as a partnership of equals.  But Eichenberger did not fulfill his responsibilities under the agreement.

21.     In accordance with her agreement with Eichenberger, Meyer sold ACGL, ACE GP, and ECGL to Pelion on or about July 31, 2018.  In order to document the transaction, asset purchase agreements reflected that (a) ACGL was transferred to Pelion in exchange for €500,000 and the immediate transfer to Meyer of 5,000,000 Pelion shares, (b) ACE GP was transferred to Pelion in exchange for €25,000, and (c) ECGL was transferred to Pelion without the return of any assets.  True and correct copies of these asset purchase agreements are attached as **Composite Exhibit B**.

22.     Eichenberger did not transfer his Pulse Evolution shares to Pelion as promised. Nevertheless, Meyer understood that title to the shares had been transferred to Pelion, and in exchange, Eichenberger received his VIP shares.

23.     Meyer also understood that the 5 million VIP shares were in her name.  Indeed, from July 2018 until May 2019, Eichenberger acted as if Meyer held 5 million shares in VIP.  In fact, investment documents sent to Mike Alfant, who later became a Director of VIP, indicated that Meyer owned 5 million VIP shares and would be on the VIP Board.

24.     At that time, Eichenberger held his interest in Pulse Evolution through Century Venture.  From time to time, Eichenberger represented to Meyer and others that he was the sole interest holder in Century Venture through A2, which he also owned. From time to time, he also represented to Meyer the value of her stake in Pulse Evolution through Century Venture.  Despite these representations, while Eichenberger owned and operated A2, which acted as his personal holding company, he was not the sole shareholder of Century Venture, nor does it appear he was

ever the sole shareholder of Century Venture.  Indeed, it appears that Peter Gross ("Gross"), the CEO of Alyco Advisory Group ("Alyco"), and Pavel Dmitriev owned and/or controlled Century Venture.  Eichenberger intentionally concealed this fact from Plaintiffs, influencing Meyer to engage Alyco to set up Donnybrook as an offshore entity.  Gross exerted control over Donnybrook without Meyer fully comprehending the extent of his control.

25.     Eichenberger represented to Meyer that Century Venture would hold the Pulse Evolution shares on behalf of—and for the benefit of—Pelion (and, once renamed, VIP).  The practice of holding equity interests offshore is not uncommon, and is a frequent practice employed by private equity firms.  Based on this, and Eichenberger's status as a lawyer, and her fiduciary, Meyer did not question this practice at the time, as it appeared consistent with the practice of other private equity firms that would hold their business interests offshore.

26.     In fact, Eichenberger suggested that Meyer should hold her interest in Pelion offshore through Donnybrook.

27.     Eichenberger, a trained lawyer, insisted as part of their ongoing business collaboration that Meyer should let Eichenberger handle her tax, business, and legal affairs, including for her personal holdings.  Eichenberger used his position as a lawyer to convince Meyer to trust him and not second-guess his structuring of transactions.  Eichenberger was able to exploit this position of trust in executing a pattern of events intended to defraud Meyer.

28.     Around July 2018, Eichenberger convinced Meyer to allow him to handle certain legal and business affairs for Meyer.  In furtherance of this relationship, on or about July 3, 2018, Meyer executed a Power of Attorney in Eichenberger's favor with respect to matters concerning "Ariadne Capital Group Limited, Malta Financial Services Authority."

29.     In furtherance of his role as Meyer's attorney, Eichenberger helped arrange for the creation of Donnybrook.   In this respect, Eichenberger engaged Gross and Alyco to create Donnybrook and serve as signatory for Donnybrook through other entities.

30.     Unbeknownst to Meyer at the time, Gross was effectively a silent partner in the resulting business venture as a result of Eichenberger's historic undischarged debts to Gross through previous business relationships with Gross, who held an interest in Century Venture as a result of Eichenberger's previous business dealings.

31.     Eichenberger continued to hold and keep his business interests outside of Pelion/VIP, contrary to the 50/50 Agreement.   For example, Meyer did not know that Eichenberger, through his equity investment in Sargon Capital with Gross, earned professional fees of approximately AU$20,400,000 in early 2019.  These fees would have been captured by the 50/50 arrangement, and therefore should have been shared with Meyer and VIP.  Eichenberger intentionally withheld this information from VIP, its board of directors, and Meyer.

32.     In early March 2019, Eichenberger and Meyer took a trip to Florida and met with Textor.  The three discussed business, including Pulse Evolution.

33.     On or about May 22, 2019, Eichenberger arranged for Donnybrook to execute a Put and Call Option Agreement with A2.  Gross signed on behalf of Donnybrook through Lakeside Management Limited.   Pursuant to the Put and Call Option Agreement, Donnybrook held irrevocable and unconditional call options to purchase 4,629,014, or fifty (50%) percent, of A2's Pelion shares.  A true a correct copy of this Put and Call Option Agreement is attached hereto as **Exhibit C**.

34.     Meyer was unaware of the impact of this Put and Call Option Agreement, which purported to alter and erode the basis on which the previously agreed and executed 50/50

arrangement was to exist, but trusted Eichenberger based on his status as her attorney and the Executive Chairman of Pelion.

35.     Initially, Eichenberger held his interest in Pelion through A2.  However, on June 1, 2019, Eichenberger assigned this interest in Pelion to Century Venture.  Eichenberger did not ask Meyer for her approval, nor did he indicate that anything material was occurring.  Eichenberger represented that the move from A2 to Century Venture was simply a transfer of assets offshore. Interestingly, from time-to-time Eichenberger represented to Meyer and to third parties that he was the sole shareholder of A2, and A2 was the sole shareholder of Century.  Neither assertion was true.

36.     Eichenberger executed a services agreement with Pelion on or about July 30, 2018. In connection therewith, he served as Executive Chairman of the Pelion board, and later, of the VIP board.  A true and correct copy of this services agreement is attached hereto as **Exhibit D**.

37.     Throughout his tenure as Executive Chairman of Pelion and VIP, Eichenberger made representations that VIP held an interest in Pulse Evolution and its successor entities.  In addition, he referred to Sargon Capital as a VIP deal and leveraged VIP resources and capital from VIP investors to pursue his objectives.

38.     Moreover, at various times, VIP advertised to investors and others that Pulse Evolution was a portfolio company in which VIP held an interest.  For example, in an investor slide deck shown to prospective VIP investors, VIP listed Pulse Evolution as one of VIP's portfolio companies.  This representation was made to investors and others based on a good faith reliance on the representations of Eichenberger.  A true and correct copy of this slide deck is attached hereto as **Exhibit E**.

39.     A subsequent audit of VIP's financials revealed that Eichenberger never transferred his interest in Pulse Evolution to Pelion or VIP.  Indeed, that audit revealed an outstanding balance owed to VIP by Eichenberger that has not been paid as of this date.

40.     Further, Eichenberger engineered representations to auditors of Pelion/VIP that the paid-in share capital for A2 was paid in by offsetting an alleged amount owed to A2 and Eichenberger, which was not factually accurate.  Eichenberger further claimed that this offset of paid-in share capital by A2 was done when it was no longer a shareholder of VIP—Century Venture had taken its place.  Eichenberger had assigned his VIP shares to Century Venture seven (7) days after the Put and Call Option Agreement that Eichenberger asked Meyer to sign.  Meyer was not aware of the implications of this agreement.  Upon information and belief, the transfer of Eichenberger's shares from A2 to Century Venture was fraudulently perpetrated while Eichenberger was in the United States.

41.     That audit also found that, by virtue of VIP's purported ownership of Century Venture as the company held by VIP for purposes of owning the Pulse Evolution stake, VIP is entitled to any revenue made by Century Venture during the period of time that Eichenberger was the chairman of VIP.  Because Eichenberger was chairman of VIP until February 23, 2021, VIP now claims an interest in all profits made by Century Venture from July 30, 2018 through February 23, 2021.

42.     An audit report by Swiss auditor Reviconta concluded that CHF 28 million is owed to VIP from Eichenberger, and that the entire equity stake that Century Venture owned in Pulse Evolution belongs to VIP.

43.     The audit further revealed that Meyer never received the €525,000 to which she was entitled for contribution to Pelion of ACGL, ACE GP, and ECGL.

**B.** *Pulse Evolution*

44.    In 2016, Textor and Eichenberger—along with Frank Patterson—founded Pulse Evolution, a Florida corporation with its principal place of business in Florida.  Pulse Evolution was a technology company that purported to produce virtual reality entertainment productions using computer animation and visual effects.

45.    Meyer met with Textor in or around September 2018.  At the time, Meyer communicated to Textor that Eichenberger wanted Pulse Evolution to be a VIP portfolio company and thought VIP could help "monetize" and improve the profitability of Pulse Evolution.

46.    At that time, Textor did not say anything to cause Meyer to question Eichenberger's conveyance of his stake in Pulse Evolution to VIP.  Further, from Textor's interactions with Meyer, she had no reason to believe Pulse Evolution was at that point not in VIP's portfolio.

47.    Without any doubts as to its stake in Pulse Evolution—being held through Century Venture—VIP moved forward with Pulse Evolution as one of its highlighted portfolio companies.  In this respect, VIP continued to assist in moving Pulse Evolution forward to become a more profitable enterprise.  Indeed, Meyer chose to highlight Pulse Evolution at the VIP Investor Summit in October 2018, with one of its representatives as the headline speaker.

48.    On or about November 19, 2018, Recall Studios announced it acquired a majority interest in Pulse Evolution which, together with the acquisition of Evolution AI Corporation, established an estimated value of $211,500,000.  At or around the time of this announcement, Textor was appointed CEO of Recall Studios.

49.    On or about January 10, 2019, Recall Studios announced its joint venture interest in FaceBank Inc. ("FaceBank").  Recall Studios later became known as FaceBank Group.

50.     On or about February 14, 2020, Recall Studios announced the acquisition of fuboTV ("FUBO").  The documents relating to this acquisition included a lock-up requirement on all Facebank directors, officers, and principal shareholders, which precluded any share transactions for a 180-day period.  There was no divestment of shares by VIP nor any indication that its previous holding in Pulse Evolution was not continuing through this transaction.

51.     On or about February 15, 2020, Textor sought to have VIP help with FUBO's pre-IPO funding.  Textor emailed Eichenberger and Meyer and suggested that VIP serve as the investment banker for FUBO in its pre-IPO phase.

52.     Textor continued to communicate with both Eichenberger and Meyer about FUBO's desire to raise funds before its IPO.

53.     Following the acquisition of FUBO, Textor joined FUBO's board.  As such, Textor had a relationship with FUBO CEO David Gandler ("Gandler").  In or around April 2020, Gandler approached Textor about FUBO's need for funding to help finance a planned October 2020 initial public offering ("IPO").  FUBO had apparently run low on cash and its working capital requirements were not going to be satisfied as of May 2020.  Therefore, in advance of the October 2020 IPO, FUBO was interested in a pre-IPO fundraising.

54.     On or about April 25, 2020, Eichenberger emailed Textor from his VIP email address, copying Meyer.  In the email, Eichenberger suggested to Textor a way for the shareholders of FUBO to access liquid capital.  Eichenberger's suggestion required cooperation from one of VIP's portfolio companies, SPiCE VC.

55.     Instead of FUBO retaining VIP as Meyer understood Textor to intend, Eichenberger took the opportunity for himself—through NVA—while serving as Executive Chairman of VIP.

56.     On or about April 30, 2020, Eichenberger executed an agreement between Century Venture, NVA, and himself to sell 735,619 shares of FUBO.  Eichenberger used Century Venture and Florida-based NVA to implement a series of transactions resulting in the sale of FUBO shares to hedge fund Cannell Capital and others.

57.     Ultimately, in effectuating the sale of 735,619 shares of FUBO, Eichenberger directed the seller of FUBO shares to transfer the funds to Textor in Florida.

58.     The proceeds from the sale of these shares, totaling $17,378.032, went to a Florida-based Seacoast Bank account owned by Wyndcrest, a Florida limited liability company based in Port Saint Lucie, Florida and owned by Textor.

59.     Eichenberger and Textor worked together through their respective Florida entities, NVA and Wyndcrest, to defraud VIP and usurp a profitable business opportunity from VIP.  In doing so, they received millions in profits that VIP was entitled to by virtue of the business opportunity that was rightfully VIP's.

60.     In an apparent attempt to ensure Meyer believed VIP was still involved in the FUBO deal, on or about May 4, 2020, Textor emailed Eichenberger and Meyer, informing them that he had a call scheduled with a banking institution, but wanted to discuss the FUBO matter with Eichenberger after the call.  Notably, Textor emailed both Eichenberger and Meyer at their VIP email addresses, but also copied Eichenberger's A2 email address.

61.     On or about May 5, 2020, Eichenberger and Meyer met with Textor via a Zoom meeting.  The topic of the meeting was "Fubo.TV – VIP Update."  At this meeting, the three discussed ways to approach the fundraising.  During the meeting, it emerged that Eichenberger responded to the offer made to VIP for VIP to assist with the sale of FUBO shares, though the terms remained unclear.

62.     That same day, Textor emailed Eichenberger and Meyer technical details of the FUBO deal.  Meyer was once again copied on this email and therefore assumed VIP was handling the deal.

63.     On or about September 27 and 28, 2020, Eichenberger and Textor exchanged multiple emails using Eichenberger's VIP email address and copying Meyer.  The emails describe an additional 307,776 shares in Facebank that were to be transferred to Eichenberger's Fidelity account by November 5, 2020.  They also described a 50/50 split of profits.

64.     FUBO effectuated a successful IPO on or about October 7, 2020.

65.     On or about December 21, 2020, Eichenberger confirmed to Meyer via WhatsApp message that he had already sold holdings in FUBO at a share price of $50.

66.     On or about December 29, 2020, Eichenberger informed Meyer via WhatsApp message that he had just closed the deal with Textor.

67.     On or about January 13 and 14, 2021, Meyer asserted via email her claims and those of VIP against Eichenberger, noting VIP was entitled to a share of the deal involving the FUBO shares.  Meyer sent Eichenberger a pro forma invoice in the amount of $8,333,333.33, payable to Century Venture in favor of VIP.

### C.     Removal of Directors from VIP Board

68.     Over time, VIP shareholders began to question Eichenberger's actions and grew suspicious of his apparent self-dealing through transactions with A2, NVA, and Century Venture.

69.     From December 24, 2020, through February 23, 2021, Eichenberger wasted approximately $500,000 in VIP funds.  These funds were used for his own personal benefit. Indeed, Swiss auditors, engaged by VIP's shareholders and board of directors under Meyer, found

that Eichenberger owed VIP approximately CHF 1,000,000 based on activities in 2019 and an additional CHF 27,000,000 based on 2020 activities.

70.     During this time, Eichenberger also contracted on behalf of VIP with Century Venture, A2, and NVA for his own personal gain.

71.     On or about February 23, 2021, VIP held an extraordinary general meeting of its shareholders.  The meeting was called for purposes of removing Eichenberger and Michael Alfant—Eichenberger's "yes-man"—from the board.  With Eichenberger's fraudulent scheme and failure to uphold his fiduciary duties to VIP discovered, the VIP shareholders voted Eichenberger and Alfant off the board and Meyer was elected as the sole member of VIP's board of directors on or about February 25, 2021.

### COUNT I:  BREACH OF CONTRACT AGAINST EICHENBERGER (DAMAGES)

72.     This is an action against Eichenberger for damages as a result of Eichenberger's breach of the 50/50 Agreement.

73.     Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

74.     Meyer and Eichenberger entered into the 50/50 Agreement.

75.     Pursuant to the 50/50 Agreement, Eichenberger agreed to convey his $15,000,000 Pulse Evolution stake to Pelion n/k/a VIP.

76.     Eichenberger breached the 50/50 Agreement by his conduct in the Southern District of Florida.  Specifically, Eichenberger did not convey his $15,000,000 Pulse Evolution stake, by continuing to hold the interest through Century Venture.  Eichenberger later used NVA and Century Venture to sell the equity interest rightfully belonging to VIP.  Eichenberger profited

personally from this transaction and failed to convey to VIP any of the proceeds from the sale of the Pulse Evolution stake.

77.     As a consequence of the foregoing breaches by Eichenberger, Plaintiffs have sustained damages, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of Eichenberger's failure to comply with the 50/50 Agreement.

WHEREFORE, Plaintiffs request judgment in their favor and against Eichenberger for damages in an amount to be determined, together with court costs and reasonable attorneys' fees recoverable, and for all other appropriate relief.

## COUNT II:  BREACH OF CONTRACT
## AGAINST EICHENBERGER (SPECIFIC PERFORMANCE)

78.     This is an action against Eichenberger for specific performance as a result of Eichenberger's breach of the 50/50 Agreement.  This Count is pled in the alternative to Count I.

79.     Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

80.     Meyer and Eichenberger entered into the 50/50 Agreement.

81.     Pursuant to the 50/50 Agreement, Eichenberger agreed to convey his $15,000,000 Pulse Evolution stake to Pelion n/k/a VIP.

82.     Eichenberger breached the 50/50 Agreement by his conduct in the Southern District of Florida.  Specifically, Eichenberger did not convey his $15,000,000 Pulse Evolution stake, by continuing to hold the interest through Century Venture.  Eichenberger later used NVA and Century Venture to sell the equity interest rightfully belonging to VIP.  Eichenberger profited personally from this transaction and failed to convey to VIP any of the proceeds from the sale of the Pulse Evolution stake.

83.     As a consequence of the foregoing breaches by Eichenberger, Plaintiffs have sustained damages, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of Eichenberger's failure to comply with the 50/50 Agreement.  Money damages alone will not suffice to make Plaintiffs whole with respect to the significant business and financial investment that Plaintiffs invested in VIP.  The Pulse Evolution stake was unique when acquired and was to play a unique role in the success of VIP.  The unique value of the Pulse Evolution stake within VIP's portfolio is evident from the profits Eichenberger and others made in connection with Pulse Evolution and related FUBO transactions.

84.     Because of the unique value and opportunity associated with the FUBO shares owed to Plaintiffs, the damages sustained cannot be compensated monetarily and require specific performance.

WHEREFORE, Plaintiffs request judgment in their favor and against Eichenberger, awarding specific performance based on Eichenberger's breach of the 50/50 Agreement, together with court costs and reasonable attorneys' fees recoverable.

### COUNT III: DAMAGES AGAINST EICHENBERGER FOR BREACH OF FIDUCIARY DUTY OF LOYALTY

85.     This is an action against Eichenberger for breach of his fiduciary duty of loyalty to VIP.

86.     Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

87.     As highlighted above, Eichenberger was the chairman of VIP's board.  During his time with VIP, Eichenberger had—and continues to have—a duty of loyalty arising from his position of confidence at VIP.  Specifically, as chairman of VIP's board, Eichenberger had a duty

to not take personal advantage of corporate opportunities in which the corporation itself may have an interest.

88.     Eichenberger's position as an officer and employee of VIP and the circumstances of his employment created a situation entitling VIP to his undivided loyalty and fidelity during his employment and tenure at VIP, and Eichenberger had a duty to act loyally to VIP in all matters during the course of his employment, including acting in the best interest of VIP and its shareholders and for the benefit of VIP's business at all times.

89.     VIP reposed great trust in Eichenberger regarding all aspects of his employment and leadership position with VIP.  Eichenberger willingly and knowingly accepted this great trust, required in light of his position as chairman.  Eichenberger then betrayed all manner of trust reposed by VIP.

90.     While still chairman of VIP, Eichenberger sought to defraud VIP and its shareholders for his own financial benefit.

91.     As highlighted above, Eichenberger breached his fiduciary duties and duty of loyalty by, among other things, engaging in the following prohibited acts:

    a.  self-dealing and transacting business for his own personal gain on behalf of VIP with entities in which he had an interest;

    b.  directly or indirectly transmitting confidential information to his personal devices or those of his business associates;

    c.  using information relating to VIP's shareholders, including Meyer, for purposes other than appropriate business purposes of VIP;

    d.  failing to protect and maintain VIP's property and assets;

e.   using VIP's property and assets for purposes other than legitimate business purposes on behalf of VIP;

f.   using VIP's assets for personal gain or advantage including, without limitation, confidential information;

g.   depriving VIP of an opportunity by competing with VIP or using VIP's property or information for personal gain;

h.   depriving VIP of an opportunity by taking for himself an opportunity that belongs to VIP or helping others to do so who are in a position to divert an opportunity of VIP for Eichenberger's benefit;

i.   failing to disclose material information to VIP to VIP's detriment;

j.   misleading the VIP board and its shareholders with respect to the Pulse Evolution investment and other investments;

k.   intentionally violating federal securities laws and regulations; and

l.   acting solely in his own self-interest and for his benefit, with no benefit whatsoever to VIP.

92.   As a result of Eichenberger's conduct, Plaintiffs have been damaged, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of Eichenberger's breach of his duty of loyalty owed to VIP.

WHEREFORE, Plaintiffs request judgment in their favor, awarding damages against Eichenberger, for his breach of duty of loyalty to VIP, for actual and punitive damages, together with court costs and reasonable attorneys' fees recoverable pursuant to applicable law pursuant to the "Wrongful Act Doctrine," and further preventing and restraining Eichenberger from further and continuing damages to VIP by continuing his unlawful activity.

## COUNT IV: DAMAGES FOR EICHENBERGER'S FRAUDULENT INDUCEMENT

93.     This is an action for damages against Eichenberger based on his fraudulent inducement of Meyer to convey her business interests to Pelion and assist with the marketing and sale of FUBO shares.

94.     Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

95.     In order to induce Meyer to agree to convey to Pelion her business interests in ACGL, ACE GP, and ECGL, Eichenberger made continuous material representations concerning his financial situation, the persons and entities with whom Meyer would be engaging in business, his interest in Pulse Evolution, and the roles of A2 and Century Venture in VIP.  Eichenberger also falsely represented VIP's interests in offshore holdings of Century Venture to conceal his scheme to defraud Plaintiffs and continue to profit from his position with VIP and as Meyer's business partner.

96.     Eichenberger obtained Meyer's agreement to not only transfer her interest in ACGL, ACE GP, and ECGL, but also many other VIP transactions, including the entire structuring of VIP by making knowing misstatements of his intentions to Meyer (collectively, the "False Representations").

97.     Eichenberger represented on numerous occasions, to Meyer and VIP investors and employees, that he was conveying to VIP his interest in Pulse Evolution, to be held through Century Venture.  He reaffirmed that Pulse Evolution was a portfolio company of VIP and that VIP held an equity interest in Pulse Evolution during investor pitches, even including Pulse Evolution as a portfolio company on pitch decks.  For example, in November 2018, Eichenberger

gave a PowerPoint presentation to prospective VIP investors in which he claimed VIP owned shares of Pulse Evolution, which were held by Century Venture.

98.      Eichenberger also concealed the identity of other persons involved with Century Venture, claiming to be the sole shareholder.   Specifically, Eichenberger concealed the involvement of Gross and Pavel Dmitriev from Meyer when negotiating the 50/50 Agreement.

99.      Eichenberger also misrepresented his financial condition while negotiating the 50/50 Agreement, hiding the extent of his debt and his lack of liquid capital to support ongoing financing of VIP.

100.     These False Representations were material to Meyer's decision to partner with Eichenberger, convey her business interests into Pelion, and to continue doing business with Eichenberger.  Meyer would not have worked to add value to Pulse Evolution, and later Facebank and FUBO, if she did not believe VIP owned Century Venture's interest in Pulse Evolution (and later Facebank and FUBO).

101.     At the time Eichenberger made these False Representations, it was his intention that Meyer rely on these False Representations in transferring her business interests to Pelion and assisting him in building VIP and its purported portfolio companies.  Eichenberger sought to secure an interest in the business interests Meyer was contributing to VIP without actually conveying any interest in Pulse Evolution.

102.     Meyer actually, reasonably, and detrimentally relied on the False Representations, which were made with the actual intent to induce Meyer to transfer her business interests to Pelion—and to Eichenberger through Century Venture—and continue doing business with Eichenberger through VIP.

103.    But for the False Representations of Eichenberger, Meyer would not have agreed to transfer her business interests to Pelion, continued doing business with Eichenberger, or assisted with Pulse Evolution.

104.    As a result of this actual and reasonable reliance on the False Representations Plaintiffs have been damaged.

WHEREFORE, Plaintiffs request judgment in their favor and against Eichenberger, awarding damages against Eichenberger, for his fraud in the inducement, together with court costs and reasonable attorneys' fees recoverable pursuant to applicable law.

## COUNT V:  CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

105.    This is an action against Eichenberger, A2, Textor, NVA, Century Venture, and Wyndcrest for damages as a result of their civil conspiracy to defraud Plaintiffs.

106.    Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

107.    Defendants collectively committed numerous overt acts in furtherance of their conspiracy to defraud Plaintiffs, including but not limited to:

a. secretly converting confidential information for the future use and benefit of Defendants, while Eichenberger was in the employ of VIP;

b. inducing Plaintiffs to rely on the preservation and loyalty of the VIP board for the future benefit of VIP, while Eichenberger plotted all the while to abdicate his position at VIP once the conflict of interest was discovered and Defendants were no longer able to defraud Plaintiffs;

c. influencing the publishing of blog posts and other negative media releases regarding Plaintiffs;

    d.   avoiding liabilities owed to Plaintiffs; and

    e.   transacting business to the detriment of Plaintiffs, including, but not limited to, the sale of restricted stock in FUBO to which VIP had a claim.

108.    Eichenberger and Textor exploited Eichenberger's position of trust with Plaintiffs to steal a lucrative business opportunity from VIP, which allowed Eichenberger and Textor to personally profit.

109.    Eichenberger and Textor used A2, Century Venture, NVA, and Wyndcrest to conduct a series of transactions that ultimately resulted in proceeds from the sale of FUBO shares to which VIP was entitled going to a Florida-based Wyndcrest account owned by Textor.

110.    As a result of the foregoing overt acts, among others, perpetrated in collusion by Defendants, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants, jointly and severally, for their damages in an amount to be proven at trial, including attorneys' fees and recoverable costs of suit, and compensatory and consequential damages including, but not limited to, lost profits, together with such other and further relief as is just, equitable, and proper.

Dated:  July 28, 2023             Respectfully submitted,

                              **SQUIRE PATTON BOGGS (US) LLP**

                              */s/ Raúl B. Mañón*_____
                              Raúl B. Mañón
                              Florida Bar No. 18847
                              Raul.manon@squirepb.com
                              200 South Biscayne Boulevard, Suite 3400
                              Miami, FL 33131
                              Telephone:  305.577.7000
                              Facsimile:  305.577.7001

                              *Counsel for Plaintiffs Julie Meyer and*
                              *VIVA Investment Partners AG*