# EXHIBIT A

30 July 2018

# SHARE PURCHASE AGREEMENT

Regarding the sale and purchase of the total share capital of
Pelion Pension Advisors S.A.

between

**Sarah Caygill**, 12 rue Guillaume-Farel, 1204 Geneva, Switzerland

(hereinafter referred to as "Seller")

and

**(Alternative)2 Holding AG**, Dufourstrasse 60, 8702 Zollikon, Switzerland

(hereinafter referred to as "Buyer")

1

**PARTIES**

1. **Sarah Caygill** of 12 rue Guillaume-Farel, 1204 Geneva, Switzerland (the "**Seller**") and

2. **(ALTERNATIVE)2 HOLDING AG**, Dufourstrasse 60, 8702 Zollikon/Zurich (the "Buyer");

**RECITALS**

A. Pelion Pension Advisors SA is a company limited by shares incorporated under the laws of Switzerland, having its statutory seat at 12 rue Guillaume-Farel, 1204 Geneva, Switzerland, registered in the Commercial Register under Federal number CH-660-0.108.013-9 (the "**Company**").

B. The Company's share capital is of CHF 100,000, paid-up to CHF 50,000 as of the date hereof and divided into 100,000 registered shares with a nominal value of CHF 1 each.

C. The Seller is the holder of 100% of the shares in the Company, which constitute all the issued shares in the Company (the "**Shares**").

D. The Seller has agreed to sell and the Buyer agreed to purchase all the issued share capital in the Company.

E. The terms and conditions of that purchase are now set out in this Agreement.

**IT IS AGREED** as follows:

**1   DEFINITIONS**

1.1   In this Agreement the following words and expressions shall, unless the context otherwise requires, have the following meanings:

**Articles**         means the articles of association and/or any other constitutional documents of the Company;

**Company**      means Pelion Pension Advisors S.A., a Swiss company limited by shares, whose registered office is at 12 rue Guillaume-Farel, 1204 Geneva, Switzerland;

**Effective Date**  means the date of this Agreement;

**Encumbrance**  means any mortgage, charge, pledge, lien, option, restriction, right of first refusal, right of pre-emption, third party right, any other encumbrance or security interest of any kind, and any other type of preferential arrangement (including title transfer and retention arrangements) having a similar effect;

**Shares**        means 100,000 ordinary registered shares with a nominal value of CHF 1 each, representing 100% of the entire issued share capital of the

2

Company;

## 2  SALE AND PURCHASE

2.1  Subject to the terms and conditions set out in this Agreement, the Seller hereby irrevocably agrees to sell and transfer the Shares to the Buyer, free from any Encumbrance and together with all rights of any nature whatsoever at or after the Effective Date attaching or accruing to them.

2.2  The Buyer agrees to buy the Shares from the Seller on the Effective Date.

## 3  CONSIDERATION

3.1  The consideration payable by the Buyer to the Seller for the Shares sold under this Agreement shall be CHF 60,000 as set out in **Schedule 1** (the "**Purchase Price**")

3.2  For the avoidance of doubt, the sale and transfer of the Shares to the Buyer includes the transfer to the Buyer of all obligations of the Seller to the Company in respect of the unpaid part of the nominal value of the Shares in the total amount of CHF 50,000 at the Effective Date as set out in Schedule 1 (the "**Unpaid Capital Amount**"). The Buyer's acceptance of such obligations shall be set-off against the Purchase Price as set out in Schedule 1 so that the Buyer shall pay to the Seller on the Effective Date the net amount of CHF 10,000.

## 4  CLOSING

On the Effective Date, the Seller shall deliver to the Buyer:

4.1  A copy of the minutes of the board of directors of the Company approving, unanimously and without reservation, the transfer of the Shares to the Buyer in accordance with the Company's Articles and the registration of the Buyer as sole shareholder in the Company's share register;

4.2  The Company's share register evidencing the Buyer as the valid and sole owner of the Shares;

4.3  The resignation letter as at the Effective Date signed by the Seller as sole member of the board of directors and employee of the Company, effective as of the Effective Date, including a confirmation by the Seller has no claims whatsoever against the Company;

4.4  The original books and records of the Company.

## 5  WARRANTIES

5.1  The Seller irrevocably and unconditionally represents, warrants and undertakes to the Buyer in relation to the Shares that the following statements are true, accurate, complete and not misleading at the Effective Date:

   5.1.1  The Company is duly organized and validly existing under the laws of Switzerland. The capital of the Company amounts to CHF 100,000 divided into 100'000 shares of CHF 1.- each. The Shares have been validly issued and they are paid for up to CHF 50,000.

   5.1.2  The Seller is the sole legal and beneficial owner of the Shares and is entitled to sell and transfer to the Buyer the full legal and beneficial ownership in them free from all Encumbrances on the terms of this Agreement and without the consent of any third party.

   5.1.3  There is no agreement or arrangement to create any Encumbrance over the Shares and no claim has been made by any third party or other person to be entitled to the benefit of any such Encumbrance.

   5.1.4  The Company has never issued share certificates representing Shares.

5.2  The Seller also irrevocably and unconditionally represents, warrants and undertakes to the Buyer that the following statements are true, accurate, complete and not misleading at the Effective Date:

   5.2.1  There are no liabilities, obligations, debts, undertakings, commitments, guarantees or indemnities of the Company, whether or not accrued, other than those included or reflected in the Financial Statements (as defined below) and no such liabilities, obligations, debts, undertakings, commitments, guarantees or indemnities of the Company have arisen since the date of the Financial Statements;

   5.2.2  There is no claim, proceeding or other similar action pending or threatened by or against the Company either in court or before any administrative board, agency or commission;

   5.2.3  The Company is bound by no financing, loan, borrowing or similar agreement;

   5.2.4  Schedule 2 contains the balance sheet and the profit and loss statement of the Company as of 31 December 2017 (the "**Financial Statements**"). Those financial statements have been established in compliance with all applicable legal requirements and generally accepted accounting principles of the Swiss Code of Obligations. The balance sheets and the profit and loss statements of the Company are true and complete in all respects and fairly and truly present the financial condition of the Company;

   5.2.5  The Company has paid all taxes for which it is liable which were due. The Company has timely filed all tax returns for all taxes required by law to have been filed and all such tax returns are complete and accurate. The Seller, thus, is and shall be liable for all taxes to be paid by the Company due to any reassessments or otherwise for tax periods before the date hereof. The Financial Statements contain provisions to cover all taxes caused by events having occurred before 31 December 2017, if such taxes have not yet been

4

paid before such date. The Company has complied with all statutory provisions, rules, regulations, orders and directions concerning taxes and has established internally or externally adequate systems to meet the requirements regarding taxes;

5.2.6 The Company has no employees. It has at all times complied with all material applicable (labour) laws and regulations, including those concerning safety and health and all (collective) agreements relating to the employment of its employees and no former employee or deemed employee has raised any claim against the Company for breach of such laws and regulation whether for payment of salary, termination of employment, illness or otherwise;

5.2.7 There have been no injuries inflicted upon any of the Company's former employees which may lead to a claim against the Company and are not fully covered by insurance. There has been no employment-related illness of any former employee which may lead to a claim against the Company;

5.2.8 All social security dues for which the Company is or may be held liable in any way in respect of any period ending on or before the date hereof, have either been paid in full or have been fully provided for by corresponding provisions in the Financial Statements. No outstanding obligations of the Company exist towards the Company's former employees in respect of pension or early retirement or pre-pension which relate to the period prior to the date hereof;

5.2.9 The Company has in all material respects complied with applicable laws and regulations;

5.2.10 The Company has no subsidiary, branch, representative office or other similar establishment in Switzerland or abroad;

5.2.11 The Seller has no claim whatsoever against the Company, whether as shareholder, employee or otherwise;

5.2.12 Since 31 December 2017, the Company has not carried out any activity. Without limitations, the Company is currently not a party to any contract or agreement of any type with any person or entity.

## 6 INDEMNITIES

6.1 The Seller undertakes to indemnify the Buyer for any damage, loss, debt, obligation claim, decision, judgement, costs or expenses, including legal expenses, resulting from the inaccuracy or breach of the Seller's warranties as described under clause 5 above, irrespective of any negligence of the Seller.

6.2 Articles 201 of the Swiss Code of Obligations shall not apply.

## 7 CONFIDENTIALITY

Seller and Purchaser shall consult before issuing press releases or otherwise making any public statements with respect to this Agreement and shall not issue any such press release or statement without the prior approval of the other Party.

## 8 COSTS

8.1 Save as agreed otherwise, each party shall pay its own costs and expenses of and incidental to the negotiation, preparation, execution and implementation by it of this Agreement and of all other documents or matters referred to in it.

## 9 FURTHER ASSURANCE AND ASSISTANCE

9.1 At any time (whether before or after completion) each of the parties shall do and execute, or procure to be done and executed, all necessary acts, deeds, documents and things as may be reasonably requested of it by the other party to give effect to this Agreement.

9.2 The Seller agrees that it shall provide to the Buyer after completion of the sale contemplated by this Agreement all such information and documents concerning the Company or its affairs in the period prior to that completion as the Seller has in its power or possession and as the Buyer may from time to time reasonably require.

## 10 MISCELLANEOUS

10.1 No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of both parties.

10.2 Neither party may assign or transfer or purport to assign or transfer any of its rights or obligations under this Agreement.

## 11 GOVERNING LAW AND JURISDICTION

11.1 This Agreement and the relations between the parties shall be governed by and construed in accordance with the laws of Switzerland.

11.2 Both parties irrevocably agree that the Courts of the Canton of Geneva shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning this Agreement and any matter arising under it.

[*signatures on next page*]

SIGNED
by **Sarah Caygill**:

*Sarah Caygill* (signature)

SIGNED
for **(ALTERNATIVE)2 HOLDING AG**:

(signature)

Name:  Dr. René Eichenberger

## SCHEDULE 1

| SELLER | NO OF SHARES | PURCHASE PRICE COMPONENTS* (IN CHF) | PURCHASE PRICE (IN CHF) |
|---|---|---|---|
| Sarah Caygill, Geneva, Switzerland | 100,000 | Shares & Costs | 60,000 |
| | | Unpaid Capital | (50,000) |
| Total Purchase Price | | | 10,000 |

8

# SCHEDULE 2

[Financial statements of the Company]

PELION PENSION ADVISORS SA
FINANCIAL STATEMENTS
FOR THE YEAR ENDED 31 DECEMBER 2017



PELION PENSION ADVISORS SA
INDEX

| | |
|---|---|
| Balance Sheet | 1 |
| Statement of Income and Retained Earnings | 2 |
| Notes to the Accounts | 3 to 4 |

**PELION PENSION ADVISORS SA**
**COMPANY INFORMATION**

| | |
|---|---|
| Incorporation Date | 11/01/2013 |
| Place of Incorporation | Geneva |
| Company Name | Pelion Pension Advisors SA |
| Director | Sarah Caygill |
| Registered Number | CH-660-0108013-9 |
| Registered Office | 12 rue Guillaume Farel<br>c/o Sarah Caygill<br>1204 Genève |
| Registered auditor | Not applicable |



**PELION PENSION ADVISORS SA**
**Balance Sheet**
as at 31 December 2017

| | Note | 2017 CHF | 2016 CHF |
|---|---|---|---|
| **ASSETS** | | | |
| **Current Assets** | | | |
| Cash at Bank | | 272 | 277 |
| Due from related parties | | 49,728 | 49,722 |
| **Total Current Assets** | | 50,000 | 50,000 |
| **Non Current Assets** | | | |
| Share Capital not paid in | | 50,000 | 50,000 |
| **Total Non Current Assets** | | 50,000 | 50,000 |
| **TOTAL ASSETS** | | 100,000 | 100,000 |
| **LIABILITIES AND EQUITY** | | | |
| **Current Liabilities** | | | |
| Accruals and deferred income | | - | - |
| Taxation provision | | - | - |
| **Total Current Liabilities** | | - | - |
| **Equity** | | | |
| Share Capital | 4 | 100,000 | 100,000 |
| Retained earnings | | - | - |
| **Total Equity** | | 100,000 | 100,000 |
| **TOTAL LIABILITIES AND EQUITY** | | 100,000 | 100,000 |

*Sarah Caygill* (signature)

PELION PENSION ADVISORS SA
Profit & Loss Account
For the year ended 31 December 2017

|  | 2017 CHF | 2016 CHF |
|---|---:|---:|
| **Revenue** | | |
| Operating Revenue | - | 28,595 |
| Related party income | - | - |
| Other Direct Costs | - | - |
| **Total Revenue** | - | 28,595 |
| **Operating Costs** | | |
| Salaries Costs | - | - |
| Other Personnel Costs | - | 7,513 |
| Property costs | - | 459 |
| Sales and Marketing Costs | - | 9,978 |
| Legal & Administrative Costs | - | 8,870 |
| **Total Other Operating Costs** | - | 26,820 |
| **Operating Result** | | 1,775 |
| Financial income & costs | - | (1,196) |
| Profit after financial income & costs | - | 579 |
| Taxes | | (579) |
| Profit after financial income & costs and taxes | - | - |
| Retained earnings at beginning of year | - | - |
| Retained earnings at end of year | - | - |

*Sarah Caygill* (signature)

PELION PENSION ADVISORS SA
Notes to the Accounts
For the year ended 31 December 2017

1  Notes on business activities

The company provides advisory services in the insurance and financial services sectors.

2  Principles of accounting and valuation

General principles
The financial statements have been prepared in accordance with the provisions
of the Swiss Code of Obligations.

Income recognition
Income is recognised as earned.

Foreign exchange
The functional currency of the company is Swiss Francs. Transactions in foreign
currencies are converted at the monthly exchange rate. Assets and liabilities
demoninated in foreign currencies are translated into Swiss Francs at the exchange
rates applicable on the balance sheet date. Foreign exchange movements
are recognised in the income statement.

Income taxes
Provision is made for all income tax liabilities due as at the balance sheet date based
on the taxable income of the company.

3  Related party transactions and balances
On the Balance Sheet date there is a related party payable balance made up of:
Pelion Advisors            49,728

4  Share Capital

Authorised              CHF 100,000
Issued                  100,000 of CHF 1 each half paid up

5  Other Matters
Number of Employees
The average number of full time empolyees did not exceed 10 for the year.

Guarantees, Indemnity liabilities and pledges in favour of third parties
On the balance sheet date, the company has no guarantees, indemnity liabilities and
pledges in favour of third parties.



PELION PENSION ADVISORS SA
Notes to the Accounts
For the year ended 31 December 2017

6    **Other Matters (Continued)**
Assets pledged or assigned for the securing of own liabilities, as well of assets with retention of title

On the balance sheet date, the company has no assets pledged or assigned for the securing of own liabilities, as well of assets with retention of title.

**Assets and liabilities recognised under long-term lease agreements**
On the balance sheet date the company has no assets and liabilities recognised under long-term leasing contracts.

**Liabilities to personnel welfare institutions**
On the balance sheet date, the company had a liability of CHF 0 to a personnel welfare institution

**Contingent Liabilities**
On the balance sheet date the company has no contingent liabilities.

**Exceptional and extraordinary results or prior-year adjustments**
There were no exceptional and extraordinary results or prior-year adjustments.

**Other Matters (Continued)**
**Post-balance sheet date events**
The company has discontinued activities and is now dormant.



**PELION PENSION ADVISORS SA**
**PROPOSED APPROPRIATION OF AVAILABLE EARNINGS**

|  | CHF |
|---|---|
| Accumulated losses carried forward as at 31 December 2017 | - |
| Profit for the year ended 31 December 2017 | - |
| Retained earnings carried forward as at 31 December 2017 | - |

